UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FEDERAL INSURANCE
COMPANY, et al.,

      Plaintiffs,

v.                                                    Case No. 3:13cv429/MCR/CJK

ERIC CAMPBELL, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      This cause is before the court upon plaintiffs' motion for a default judgment (doc. 13) against the defendants pursuant to Federal Rules of Civil Procedure 55(b), for defendants' failure to file an appearance, answer, or otherwise respond to plaintiffs' complaint.  On July 30, 2013, plaintiffs filed their complaint (doc. 1) and on August 22, 2013, filed proof of service of the complaint upon the defendants.[1] (Docs. 7, 8, 9, 10).   The defendants failed to appear or submit any pleadings whatsoever, and on September 11, 2013, the clerk entered a default against the defendants.  (Doc. 12).  On January 21, 2014, the court ordered that plaintiffs serve the motion for default judgment upon the defendants (doc. 17).  On February 3, 2014,

_____

[1] The defendants were all served between August 2, 2013 and August 7, 2013.

plaintiffs filed proof of service with the court, which showed that the defendants were all served with the motion for default judgment between January 22, 2014, and January 27, 2014.  (Doc. 18).  To date, no defendants have appeared in the case or filed responsive pleadings.   Upon review of the record, the undersigned concludes that the plaintiffs' motion should be granted and that a default judgment of permanent injunction and attorneys' fees should be entered against the defendants.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs brought this action for injunctive relief and damages alleging the defendants' fraudulently and criminally sold "forged surety bonds bearing the good name and trading on the sound financial reputation of plaintiffs, which are insurance companies affiliated through their common corporate parent, The Chubb Corporation."  (Doc. 1, pp. 1-2).  The defendants sold these forged surety bonds to various construction companies throughout the United States and collected millions of dollars.  (Doc. 1, p. 2).  In turn, these construction companies used the fraudulent bonds as surety for various construction projects.  Plaintiffs aver that the defendants have sold fraudulent bonds bearing the name of The Chubb Corporation's subsidiaries "at least a dozen times . . . ."  Plaintiffs allege the defendants violated the Lanham Act,15 U.S.C. § 1125, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. § 772, and were unjustly enriched.  (Doc. 1).  In their motion for default judgment, plaintiffs seek a permanent injunction against the defendants pursuant to 15 U.S.C. § 1116(a) and 18 U.S.C. § 1964(a), attorneys' fees in the amount of $83,957.50, costs in the amount of $918.00 for service or process and the

court's filing fee, and post-judgment interest accruing from the date of judgment as provided by law.  (Doc. 13, pp. 2-3).

DISCUSSION

Findings of Fact

Based on the well-pleaded allegations of the complaint (doc. 1) and the evidence presented therein, the undersigned has made certain findings of fact with regard to injunctive relief and attorneys' fees.  Defendants created fraudulent surety bonds bearing plaintiffs' names–insurance companies affiliated through their "common corporate parent," The Chubb Corporation. (Doc. 1, pp. 6-7).  Defendants also falsely held themselves out as authorized agents or representatives of these entities and offered these forged bonds as surety for various construction projects throughout the United States, including at least one project located in the Northern District of Florida. (Doc. 1, p. 7).  Some of these construction projects were funded by federal, state, and local governmental entities. (Doc. 1, pp. 7-20).  Defendants issued the fraudulent bonds by using the instrumentalities of interstate commerce, including through the federal mails, telephones, and wires.  The defendants perpetrated such a scheme in an effort to defraud construction companies throughout the United States and obtain a profit.  Defendants do not have the authority to execute or issue surety bonds or policies on behalf of the plaintiffs or any other affiliate or subsidiary of The Chubb Corporation.

Conclusions of Law

The undersigned also recommends certain conclusions of law as to attorneys' fees and injunctive relief.  Plaintiffs are entitled to a default judgment against defendants based on their failure to appear in the case.  The plaintiffs have established

the truth of the allegations in their complaint–that defendants are engaging in conduct subject to penalty under 18 U.S.C. § 1961, *et seq.*, and 15 U.S.C. § 1125. The defendants created fraudulent surety bonds bearing the name of The Chubb Corporation or one of its affiliates and issued the fraudulent bonds by using the instrumentalities of interstate commerce. The defendants perpetrated such a scheme in an effort to defraud construction companies throughout the United States and obtain a profit. The defendants knew or had reason to know the bonds were false or fraudulent, because they lacked the proper credentials to create and issue such bonds, and had no relationship with The Chubb Corporation or any of its subsidiaries or affiliates. As a result of these actions, defendants engaged in conduct subject to penalty under 18 U.S.C. § 1961, *et seq.*, and are entitled to "reasonable" attorneys' fees and costs under 18 U.S.C. § 1964(c).

Defendants have also engaged in conduct subject to penalty under 15 U.S.C. § 1125 and the plaintiffs are entitled to a permanent injunction against the defendants pursuant to 15 U.S.C. § 1116(a). Defendants created and issued forged surety bonds and related documents which featured the name of the Chubb Corporation or one of its subsidiaries or affiliates, as well as various names of personnel employed by these entities. Defendants also falsely held themselves out as authorized agents or representatives of these entities. Defendants' conduct was likely to cause confusion among consumers, who were likely to infer a connection between the defendants and the Chubb Corporation, thereby legitimizing defendants and their fraudulent scheme. The plaintiffs have presented persuasive evidence that they and the public will suffer irreparable harm in the absence of the permanent injunction order recommended below, and that defendants will suffer little, if any harm, if the permanent injunction

order is granted.  The plaintiffs' evidence and argument convinces the court that the defendants' behavior is fraudulent and unlawful, and that the public interest will be served through granting the permanent injunction recommended below.   The plaintiffs' evidence also shows that absent this permanent injunction, defendants will continue to violate 15 U.S.C. § 1125 by using plaintiffs' name and good standing as a means to perpetrate their fraudulent scheme.   Accordingly, injunctive relief is appropriate to prevent recurrence of defendants' conduct.

The Plaintiffs are Entitled to a Default Judgment

Rule 55 of the Federal Rules of Civil Procedure permits entry of a default judgment by the clerk without a hearing when "the plaintiff's claim against a defendant is for a sum certain or for a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1).  In "all other cases," such as here, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).  As a result of the default, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).  If the facts alleged in the complaint are sufficient to establish liability, the court must then conduct an inquiry to ascertain the terms of the judgment. *Arista Records, Inc. v. Baker Enter., Inc.* 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003).  "The court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . establish the truth of any allegations by evidence . . . or investigate any other matter." Fed. R. Civ. P. 55(b)(2).  An evidentiary hearing is not required in every case. *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("An evidentiary hearing is not a *per se* requirement; indeed, Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone.").  A court may exercise its discretion not to hold an evidentiary

hearing in limited circumstances, such as "where all essential evidence is already of record." *Id.*; *see also S.E.C. v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) ("Rule 55(b)(2) does not require the district court to hold either an evidentiary hearing or oral argument on a motion for a default judgment.") (*citing Thomas v. United States*, 531 F.2d 746, 748 (5th Cir. 1976) ("Taxpayer's first contention that the district court should have held an evidentiary hearing and/or oral argument on the motion is without merit.  All the essential facts were of record.")).

The severe sanction of default judgment is appropriate in this case, because the defendants have not appeared in the case or filed any pleadings, despite being properly served on two different occasions.  *See Virgin Records America, Inc. v. Lacey*, 510 F. Supp. 2d 588, 591 n.2 (S.D. Ala. 2007) (listing cases affirming the proposition that a court is justified in entering a default judgment against a party who fails to appear or respond).

The Plaintiffs are Entitled to a Permanent Injunction

Rule 65(d) of the Federal Rules of Civil Procedure requires that every order granting an injunction state the reasons why it is issued, state the terms of the injunction specifically, and describe in reasonable detail the act or acts restrained or required.  The plaintiffs seek a permanent injunction pursuant to 15 U.S.C. § 1116(a) and 18 U.S.C. § 1964(a).  15 U.S.C. § 1116(a) authorizes a district court to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under

subsection (a), (c), or (d) of section 1125 of this title."[2]  15 U.S.C. § 1116(a).  18 U.S.C. § 1964(a) details civil remedies for RICO violations under 18 U.S.C. 1961 *et seq.*, and grants district courts "jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including . . . imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce . . . ."  18 U.S.C. § 1964(a); *see also Schneidler v. Nat. Org. For Women, Inc.*, 537 U.S. 1057, 1069 (2003) (describing § 1964(a) as providing "broad civil injunctive relief").  Before granting a permanent injunction, the Eleventh Circuit requires the movant show: 1) a substantial likelihood of success on the merits; 2) irreparable injury will be suffered unless the injunction issues; 3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause

---

[2] 15 U.S.C. § 1125(a) states:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

the opposing party; and 4) if issued, the injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (citing *Siegel v. Lepore*, 234 F.3d 1162, 1176 (11th Cir. 2000)).  Plaintiffs have pled that the defendants have issued fraudulent bonds bearing the name of The Chubb Corporation and its subsidiaries.  (Doc. 1).  Specifically, plaintiffs claim the defendants used the Chubb Companies' name without authorization, produced and issued forged surety bonds falsely indicating that the Chubb Companies stood as surety on "millions of dollars in construction projects," and carried out such actions in a manner designed to untruthfully represent the surety bonds as authentic, thereby earning the defendants a substantial profit.  The defendants' unauthorized use of the plaintiffs' name, likeness, reputation, and licensure status served to confuse consumers and construction companies and damage the Chubbs Companies' reputation among such entities.  Plaintiffs have shown a substantial likelihood of success on the merits, that they (as well as consumers and future consumers of surety bonds) would suffer irreparable injury if defendants are allowed to continue their fraudulent scheme, that plaintiffs' injury outweighs any potential injury to the defendants, and that the injunction is in the public interest.  *See KEG Techs., Inc. v. Laimer*, 436 F. Supp. 2d 1364, 1374-75 (N.D. Ga. 2006) (granting injunction because plaintiff showed defendant's actions gave rise "to the likelihood of confusion in the marketplace").  As such, plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116(a).

Plaintiffs also move for injunctive relief under 18 U.S.C. § 1964.  18 U.S.C. § 1964(b), however, indicates that "[t]he Attorney General may institute proceedings under this section[,]" thus seemingly limiting a private party's attempts to obtain

injunctive relief for RICO violations under this section.  The Eleventh Circuit has not addressed whether a private party may obtain an injunction under 18 U.S.C. §1964(a), and other circuit courts have come to varying conclusions.  *Compare Nat'l Org. For Women, Inc. v. Scheidler*, 267 F.3d 687, 695 (7th Cir. 2001) ("We are persuaded instead that the text of the RICO statute, understood in the proper light, itself authorizes private parties to seek injunctive relief."), *rev'd on other grounds*, 537 U.S. 393 (2003), *with  Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076 (9th Cir. 1986) (holding that injunctive relief is not available to a private plaintiff under RICO).  In this circuit, the United States District Court for the Middle District of Florida ("Middle District") has granted injunctive relief under 18 U.S.C. § 1964 to a private plaintiff, although the United States was also moving for injunctive relief under a separate statute, and the court did not specifically address whether a private party was entitled to injunctive relief under § 1964(a).  *Baldree v. Cargill, Inc.*, 758 F. Supp. 704, 705 (M.D. Fla. 1990), *aff'd*, 925 F.2d 1474 (11th Cir. 1991) (Table).  Because plaintiffs are already entitled to injunctive relief under 15 U.S.C. § 1116(a), the court need not reach the question of whether a private party can obtain injunctive relief under 18 U.S.C. § 1964(a).  The issue has not been briefed by either party (and cannot, in any event, be fully briefed as the defendants have failed to even appear) and is not essential to the relief plaintiffs seek.

The Plaintiffs are Entitled to Attorneys' Fees

Plaintiffs also seek an award of attorneys' fees.  Having shown a Lanham Act violation, the prevailing party is entitled to "reasonable attorney fees" only in

"exceptional cases."[3]  15 U.S.C. § 1117(a).  Successful plaintiffs may also obtain "a reasonable attorney's fee" for a RICO violation.  18 U.S.C. § 1964(c).  Under 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."  18 U.S.C. § 1964(c).  "[T]o recover on a civil RICO claim, the plaintiffs must prove . . . that § 1962 was violated; second, that they were injured in their business or property; and third, that the § 1962 violation caused the injury."  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994) (citing *Avirgan v. Hull*, 923 F.2d 1572, 1577 (11th Cir. 1991)).  Turning back to plaintiffs' complaint, plaintiffs allege the defendants "acted in concert with one another to perpetrate a criminal 'enterprise' as defined by 18 U.S.C. § 1961 from which each individual defendant collected money for fraudulent surety bonds falsely bearing the name of one or more of the Chubb companies." (Doc. 1, p. 24).  As alleged, the defendants "committed multiple RICO predicate acts" when they carried out their fraudulent surety bond scheme in multiple states and on several different occasions through the use of the instrumentalities of interstate commerce, including by "federal mails, telephones, and other wires, [as] prohibited by 18 U.S.C. §§ 1341 and 1343."  (Doc. 1, p. 24-25).  Moreover, because the defendants used the "mails and wires on more than one occasion in the last ten years to effectuate their scheme to defraud," such actions "constitute[] a pattern of

---

[3] The Eleventh Circuit has indicated that "exceptional cases" are "those where the infringing party acts in a 'malicious,' 'fraudulent,' 'deliberate,' or 'willful' manner."  *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994).  While plaintiffs' allegations seemingly meet these requirements, an attorneys' fee award under either 15 U.S.C. § 1117(a) or 18 U.S.C. § 1964(c) must be "reasonable."  The court, therefore, will limit the discussion of attorneys' fees to 18 U.S.C. § 1964(c) only.

racketeering activity in violation of 18 U.S.C. § 1962 . . . ."  (Doc. 1, p. 25-26).
Plaintiffs further allege that defendants' fraudulent behavior also violated various
Florida criminal laws, including Florida Statutes 624.401, 626.112, 817.034, and
817.41.  (Doc. 1, p. 25).  Notably, in the complaint, plaintiffs include an expansive
list of the various projects to which defendants issued fraudulent surety bonds.  Based
upon the facts as pled, plaintiffs have demonstrated that defendants committed a civil
RICO violation which injured their business, and therefore, plaintiffs are entitled to
attorneys' fees and costs under 18 U.S.C. § 1964(c).

     Plaintiffs request $83,957.50 in attorneys' fees and $918.00 in costs.  (Doc.
13).  Plaintiffs have submitted their hourly time sheets.  (Doc. 16-1).  Under 18
U.S.C. § 1964(c), in assessing the appropriate amount of attorneys' fees, "the court
must determine the reasonable number of hours expended on the litigation and
multiply that amount by a reasonable hourly rate."  *Catz v. Alternative Home
Financing, Inc.*, No. 2:04-cv-356-FtM-34DNF, 2007 WL 4285355, at *3 (M.D. Fla.
Nov. 30, 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also
Serin v. Northern Leasing Systems, Inc., et al.*, No. 7:06-CV-1625, 2013 WL
1335662, at *1 (S.D.N.Y. April 3, 2013) (noting that the Second Circuit employs a
similar "'presumptively reasonable fee'" standard in determining attorneys' fees
under 18 U.S.C. § 1964(c)).  Accordingly, a court must exclude time "that [was] not
'reasonably expended,'" *Hensley*, 461 U.S. at 434, including hours that were
unreasonable, "unnecessary or redundant."  *Duckworth v. Whisenant*, 97 F.3d 1393,
1397 (11th Cir. 1996).  The court also considers the following factors in determining
the reasonableness of a party's hours expended: 1) the time and labor required; 2) the
novelty and difficulty of the questions; 3) the skill requisite to perform the legal

service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship; and 12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989).[4]

Plaintiffs have attached an affidavit from attorney Dean R. Leboeuf, who avers that plaintiff's counsels' rates and hours expended on the matter are appropriate. (Doc. 13-2).  Attorney Harry Thomas billed $450.00/hour for 15.1 hours expended on the case, attorney Karen Asher-Cohen billed $425.00/hour for 100.1 hours expended on the case, attorney Thomas Crabb billed $285.00/hour for 110.1 hours expended on the case, attorney Laura McDonald Dennis billed $215.00/hour for 11.6 hours expended on the case, and Kyle Blythe billed $115.00/hour for 6.5 hours of time.  (Doc. 13-2, p. 3).  Plaintiffs' counsel accrued approximately $44,056.50 in attorneys' fees prior to the filing of the complaint.  (Doc. 16-1).  Nevertheless, the nature of the case persuades the undersigned that the fees accrued and time expended by plaintiffs' counsel were appropriate.  Given the nature and scope of the fraudulent scheme, the potential for further injury to plaintiffs, and the legal and factual requirements antecedent to the injunctive relief sought, the undersigned believes that substantial investigation into the defendants' scheme was a necessary predicate to the

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

filing of the complaint.  Once the case was commenced, plaintiffs' counsel had to be prepared to move toward timely procurement of injunctive relief.  Such an objective–supported by demonstrating both RICO and Lanham Act violations–was necessary to prevent further unlawful conduct by the defendants.  In light of such facts, and after review of the hours expended on the case, the undersigned concludes plaintiffs' counsel should be awarded their requested attorneys' fees in the amount of $83,957.50 and costs in the amount of $918.00.

Based upon the foregoing, it is respectfully RECOMMENDED:

1.     That plaintiffs' motion for entry of default judgment (doc. 13) be GRANTED.

2.     That the Court enter a default judgment against defendants Eric Campbell, Individual Surety Group, LLC, Steve Stokeling, and First Fidelity Asurety Company, LLC.

3.     That pursuant to 15 U.S.C. § 1116(a), the court enter a permanent injunction against defendants on the terms provided in the plaintiffs' motion for default judgment (doc. 13, pp. 2-3), which are as follows:

Defendants are hereby permanently enjoined from:

A.)   Selling falsified surety bonds bearing the names of Plaintiffs, or otherwise indicating that there is any commercial relationship between them and Plaintiffs;

B.)   Using the mails, telephones, wires, or other instrumentalities of interstate commerce to sell falsified surety bonds or other documents bearing the names of Plaintiffs, or otherwise indicating that there is any commercial relationship between them and Plaintiffs.

4.     That pursuant to 18 U.S.C. § 1964(c), plaintiffs are entitled to attorneys' fees in the amount of $83,957.50, including post-judgment interest accruing from the date of judgment as provided by law.

5.     That pursuant to Federal Rule of Civil Procedure 54(d), 15 U.S.C. U.S.C. § 1117(a), and 18 U.S.C. § 1964(c), plaintiffs are entitled to costs in the amount of $918.00.

6.     That the Clerk be directed to enter judgment according to the order adopting this Report and Recommendation.

At Pensacola, Florida this 8th day of April, 2014.

/s/ Charles J. Kahn, Jr.

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *Se*e 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).